**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

KINSALE INSURANCE COMPANY,

    Plaintiff,

v.                                                                                            CASE NO:

TOP LINE GROUP, INC. and
RYAN MILEY,

    Defendants.
_____/

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

KINSALE INSURANCE COMPANY ("Kinsale") files suit against TOP LINE GROUP, INC. ("Top Line") and RYAN MILEY, and alleges:

**NATURE OF ACTION**

1. This is an action for damages and declaratory relief under 28 U.S.C. § 2201 to determine that there is no coverage for a claimant who was injured in a shooting under a general liability insurance policy that includes an Absolute Firearms Exclusion.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000 exclusive of interests and costs.

3. Venue is proper in this district because the shooting took place in this district, the underlying lawsuit is pending in this district, and otherwise, a "substantial part of the events … giving rise to the claim occurred in this district." *See* 28 U.S.C. § 1391(b)(1).

4. All conditions precedent occurred, have been performed, or were waived.

## THE PARTIES

5.  Kinsale is an Arkansas corporation with its principal place of business in Virginia. Kinsale is accordingly a citizen of Arkansas and Virginia. For purposes of this action, Kinsale is a surplus lines insurer that issued a liability policy to Top Line.

6.  Top Line is a Florida corporation with its principal place of business in Miami, Florida. Top Line is accordingly a citizen of Florida.

7.  Miley is domiciled in Miami-Dade County, Florida. Miley is accordingly a citizen of Florida.

## THE SHOOTING

8.  On 04/27/2023, Miley was shot at the apartment complex owned and operated by Lincoln Gardens, LLC ("Lincoln Gardens"), where Top Line provided security services.

9.  According to the Police Report, when Lieutenant Boothe arrived at the scene, he observed Miley "sitting on the southwest corner of the complex suffering from a gunshot wound." (*See* Police Report, which is attached as Exhibit "A.")

10. Miley was shot by "Ms. Lucy, [who] brandished a black with pink handle firearm, pointed it at him, and threatened to shoot." (*Id*.)

11. Ms. Lucy "started shooting into the ground and air, approximately three to four rounds, striking [Miley] on his right calf while he was on the sidewalk." (*Id*.)

12. As a result of the shooting, on 04/16/2025, Miley filed suit against Top Line, among others, in the circuit court of Miami-Dade County, Florida, in a lawsuit styled *Ryan Miley v. Top Line, Inc., et al.*, Case Number 2025-006979-CA-01. (*See* Complaint, which is attached as Exhibit "B.")

13. According to the complaint, Miley was "a guest and invitee of the Property, was visiting the Property when he was shot in the leg while on or around the premises of the Property." (Ex. B at ¶21.)

14. Miley blames Top Line for not protecting him "from criminal attacks which were and/or should have been reasonably foreseeable." (*Id*. at ¶54.)

15. Miley goes on to allege that Top Line "was in a superior position to appreciate such danger and to take steps necessary to deter and prevent such criminal activity." (*Id*. at ¶58.)

16. Top Line allegedly breached its duty of care by failing to provide sufficient lighting on the property, including the "common areas where Mr. Miley was shot." (*Id*. at ¶60.)

17. According to Miley, "[c]riminals could carry out physical assaults on the Property without fear of being caught, discovered, and/or prosecuted." (*Id*. at ¶66.)

## THE KINSALE POLICIES

18. "Surplus lines insurance exists to assume risks that licensed insurance companies decline to insure …" *Raven Envt. Restoration Servs., LLC v. United Nat'l Ins. Co.*, 489 F. Supp. 3d 1372, 1375 (S.D. Fla. 2020).

19. Top Line could not obtain insurance from an admitted insurer so as a last resort, it applied for insurance in the surplus lines market.

20. Top Line applied for and purchased a claims-made and reported commercial general liability policy as the Named Insured, bearing Policy Number 0100185965-3, and effective from 04/05/2025 to 04/05/2026 ("Primary Policy"). (*See* Primary Policy, which is attached as Exhibit "C.")

21. Before the Primary Policy was issued and delivered to Top Line, all forms and endorsements were disclosed to Top Line in a Binder. (*See* Binder, which is attached as Exhibit "D.")

22. Before the Primary Policy was issued and delivered to Top Line, all forms and endorsements were disclosed to Top Line in a Quote. (*See* Quote, which is attached as Exhibit "E.")

23. Top Line also applied for and purchased a surplus lines commercial excess liability policy, bearing Policy Number 0100218005-3, and effective from 04/05/2025 to 04/05/2026 ("Excess Policy"). (*See* Excess Policy, which is attached as Exhibit "F.")

24. Before the Excess Policy was issued and delivered to Top Line, all forms and endorsements were disclosed to Top Line in a Binder. (*See* Excess Binder, which is attached as Exhibit "G.")

25. Before the Excess Policy was issued and delivered to Top Line, all forms and endorsements were disclosed to Top Line in a Quote. (*See* Excess Quote, which is attached as Exhibit "H.")

26. Kinsale is providing Top Line with a defense under a complete reservation of rights, which Top Line has accepted.

## COUNT I – NO COVERAGE UNDER THE ABSOLUTE FIREARMS EXCLUSION
**(Primary Policy)**

27. Kinsale incorporates paragraphs 1 through 26.

28. The Primary Policy includes an endorsement labeled "ABSOLUTE EXCLUSION – FIREARMS" ("Absolute Firearms Exclusion") that provides:

## ABSOLUTE EXCLUSION – FIREARMS

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**
The following exclusion is added to this Policy:
This insurance does not apply to any claim or "suit" arising directly or indirectly out of, related to, or in any way involving the use of any firearm.

This exclusion applies to any claim or "suit" regardless of whether the use of a firearm is the initial precipitating cause or is in any way a cause of "bodily injury", "property damage", or "personal and advertising injury" and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any other sequence, including whether any actual or alleged "bodily injury", "property damage", or "personal and advertising injury" arises out of a chain of events that involves or includes the use of a firearm at any point.

This exclusion applies regardless of intent and regardless of the particular cause of action asserted including, but not limited to, negligence or other wrongdoing in:

(1)  The prevention or suppression, or failure to prevent or suppress, any such act or incident;

(2)  The insured's actual or alleged negligent employment, supervision, hiring, training, or retention of any "employee", independent contractor, or any other person or organization;

(3)  Reporting or failure to report to the proper authorities any act or incident involving the use of a firearm;

(4)  Conducting or failing to conduct an investigation or background check; or

(5)  Providing or failing to provide first aid or medical treatment for any injury arising out of the use of a firearm.

(*See* Ex. C at Form CAS3111 11121, Pg. 1/1.)

29.     The Primary Policy includes an endorsement labeled "POLICY AMENDMENT – EXTRINSIC EVIDENCE" ("Extrinsic Evidence") that provides in pertinent: "Our right and duty to defend or indemnify the insured against any claim or suit will be determined by review of the facts and allegations pleaded and the terms of this Policy, and we may look to and consider extrinsic evidence outside of the allegations, facts pleaded, or any combination thereof by any

claimant to determine whether we owe a duty to defend or indemnify against any such claim or suit." (*Id*. at Form ADF2000 0622, Pg. 1/1.)

30. Kinsale can accordingly rely on extrinsic evidence like police reports, statements made to the police, and discovery in the underlying action.

31. The Primary Policy includes an endorsement labeled "ADDITIONAL POLICY EXCLUSIONS," which includes a Duty to Defend exclusion that provides: "Where there is no coverage under the Policy, there is no duty to defend." (*Id*. at Form CAS3043 0621, Pg. 2/3.)

32. Top Line was sued over Miley's shooting at the Property where Top Line provided security services. Specifically, on 04/27/2023, Miley was "a guest and invitee of the Property, was visiting the Property when he was shot in the leg while on or around the premises of the Property." (Ex. B at ¶21.)

33. Accordingly, Kinsale has no duty to defend or pay damages under the Primary Policy's Absolute Firearms Exclusion.

## COUNT II – NO COVERAGE UNDER THE ASSAULT AND BATTERY EXCLUSION
**(Primary Policy)**

34. Kinsale incorporates paragraphs 1 through 26.

35. The Primary Policy includes an endorsement labeled "EXCLUSION – ASSAULT AND BATTERY" ("Assault and Battery Exclusion") that provides:

## EXCLUSION - ASSAULT AND BATTERY

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**

The following exclusion is added to this policy:

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising out of, related to, or, in any

way involving any actual or alleged assault, battery, harmful or offensive contact, or threat, whether provoked or unprovoked. This exclusion includes but is not limited to:

1. The prevention or suppression, or the failure to suppress or prevent any assault, battery, harmful or offensive contact, or threat;

2. The failure to provide an environment safe from any assault, battery, harmful or offensive contact, or threat, or the failure to warn of the dangers of the environment that could contribute to any assault, battery, harmful or offensive contact, or threat;

3. The selling, servicing or furnishing of alcoholic beverages resulting in any assault, battery, harmful or offensive contact, or threat;

4. Injury or damage committed while using reasonable force to protect persons or property or acting in self-defense;

5. The reporting or failing to report to the proper authorities;

6. Conducting or failing to conduct an investigation of any assault, battery, harmful or offensive contact, or threat;

7. Providing or failing to provide first aid or medical treatment, or otherwise handling or responding after there has been an assault, battery, harmful or offensive contact, or threat;

8. Any assault, battery, harmful or offensive contact, or threat whether caused by, or at the instigation, instruction, direction or due to the negligence of the insured, the insured's employees, agents, patrons, customers or any other person arising from any causes whatsoever; or

9. The negligent hiring, employment, training, supervision, or retention of any employee or agent of any insured with respect to items 1. through 8. above.

This exclusion applies regardless of fault or intent and regardless of the particular cause of action.

This exclusion applies to any claim or "suit" regardless of whether assault, battery, harmful or offensive contact, or threat is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged "bodily injury", "property damage" or "personal and advertising injury" arises out of a chain of events that includes any assault, battery, harmful or offensive conduct.

> For purposes of this endorsement, **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, item **a. Expected or Intended Injury** is deleted and replaced with the following:
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

(*See* Ex. C at Form CAS3002 1016, Pg. 1/1.)

36. The Primary Policy includes an endorsement labeled "POLICY AMENDMENT – EXTRINSIC EVIDENCE" ("Extrinsic Evidence") that provides in pertinent: "Our right and duty to defend or indemnify the insured against any claim or suit will be determined by review of the facts and allegations pleaded and the terms of this Policy, and we may look to and consider extrinsic evidence outside of the allegations, facts pleaded, or any combination thereof by any claimant to determine whether we owe a duty to defend or indemnify against any such claim or suit." (*Id*. at Form ADF2000 0622, Pg. 1/1.)

37. Kinsale can accordingly rely on extrinsic evidence like police reports, statements made to the police, and discovery in the underlying action.

38. The Primary Policy includes an endorsement labeled "ADDITIONAL POLICY EXCLUSIONS," which includes a Duty to Defend exclusion that provides: "Where there is no coverage under the Policy, there is no duty to defend." (*Id*. at Form CAS3043 0621, Pg. 2/3.)

39. Top Line was sued over Miley's shooting at the Property where Top Line provided security services. Specifically, on 04/27/2023, Miley was "a guest and invitee of the Property, was visiting the Property when he was shot in the leg while on or around the premises of the Property." (Ex. B at ¶21.)

40. Accordingly, Kinsale has no duty to defend or pay damages under the Primary Policy's Assault and Battery Exclusion.

### COUNT III – NO COVERAGE UNDER THE
### ABSOLUTE FIREARMS EXCLUSION
**(Excess Policy)**

41. Kinsale incorporates paragraphs 1 through 26.

42. The Excess Policy includes an endorsement labeled "ABSOLUTE EXCLUSION – FIREARMS" ("Absolute Firearms Exclusion") that provides:

## ABSOLUTE EXCLUSION – FIREARMS

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL EXCESS LIABILITY COVERAGE**

The following exclusion is added to this Policy:

This insurance does not apply to any claim or suit arising directly or indirectly out of, related to, or in any way involving the use of any firearm.

This exclusion applies to any claim or suit regardless of whether the use of a firearm is the initial precipitating cause or is in any way a cause of bodily injury, property damage, personal and advertising injury or any other injury or damage and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged bodily injury, property damage, personal and advertising injury or other injury or damage, arises out of a chain of events that involves or includes the use of a firearm at any point.

This exclusion applies regardless of intent and regardless of the particular cause of action asserted including, but not limited to, negligence or other wrongdoing in:

1. The prevention or suppression, or failure to prevent or suppress, any such act or incident;

2. The insured's actual or alleged negligent employment, supervision, hiring, training, or retention of any employee, independent contractor, or any other person or organization;

3. Reporting or failure to report to the proper authorities any act or incident involving the use of a firearm;

4. Conducting or failing to conduct an investigation or background check; or

     5.       Providing or failing to provide first aid or medical treatment for any injury arising out of the use of a firearm.

(*See* Ex. F at Form CAX3162 1121, Pg. 1/1.)

     43.      The Excess Policy includes an endorsement labeled "POLICY AMENDMENT – EXTRINSIC EVIDENCE" ("Extrinsic Evidence") that provides in pertinent part: "Our right and duty to defend or indemnify the insured against any claim or suit will be determined by review of the facts and allegations pleaded and the terms of this Policy, and we may look to and consider extrinsic evidence outside of the allegations, facts pleaded, or any combination thereof by any claimant to determine whether we owe a duty to defend or indemnify against any such claim or suit." (*Id*. at Form ADF2000 0622, Pg. 1/1.)

     44.      Kinsale can accordingly rely on extrinsic evidence like police reports, statements made to the police, and discovery in the underlying action.

     45.      The Excess Policy includes a Duty to Defend exclusion that provides: "Where there is no coverage under the Policy, there is no duty to defend." (*Id*. at Form CAX0001 0817, Pg. 2/11.)

     46.      Top Line was sued over Miley's shooting at the Property where Top Line provided security services. Specifically, on 04/27/2023, Miley was "a guest and invitee of the Property, was visiting the Property when he was shot in the leg while on or around the premises of the Property." (Ex. B at ¶21.)

     47.      Accordingly, Kinsale has no duty to defend or pay damages under the Excess Policy's Absolute Firearms Exclusion.

**COUNT IV – NO COVERAGE UNDER
THE ASSAULT AND BATTERY EXCLUSION**
**(Excess Policy)**

     48.      Kinsale incorporates paragraphs 1 through 26.

49. The Excess Policy includes an endorsement labeled "EXCLUSION – ASSAULT, BATTERY, ABUSE, OR MOLESTATION" ("Assault and Battery Exclusion") that provides:

## EXCLUSION - ASSAULT, BATTERY, ABUSE, OR MOLESTATION

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL EXCESS LIABILITY COVERAGE**

The following exclusion is added to this Policy:

This insurance does not apply to any claim or suit for bodily injury or property damage, or any other injury or damage, arising out of, related to, or in any way involving any actual or alleged assault, battery, abuse, or molestation. Assault, battery, abuse, or molestation includes, but is not limited to, any conduct, physical act, gesture, sexual contact (whether or not consensual), sexual molestation, sexual or physical assault or battery, sexual abuse, sexual harassment or exploitation, harmful, unwanted or offensive contact, or spoken or written words of a sexual or physically violent nature, whether provoked or unprovoked.

This exclusion includes but is not limited to:

a. The prevention or suppression of, or the failure to suppress or prevent any assault, battery, abuse, or molestation;

b. The failure to provide an environment safe from any assault, battery, abuse or molestation, or the failure to warn of the dangers of the environment that could contribute to any assault, battery, abuse, or molestation;

c. The selling, servicing, or furnishing of alcoholic beverages resulting in any assault, battery, abuse, or molestation;

d. The reporting or failing to report to the proper authorities;

e. Conducting or failing to conduct an investigation of any assault, battery, abuse, or molestation;

f. Injury or damage committed while using reasonable force to protect persons or property or acting in self-defense;

g. Providing or failing to provide first aid or medical treatment, or otherwise handling or responding after there has been any assault, battery, abuse or molestation;

    h.      Any assault, battery, abuse, or molestation, whether caused by, or at the instigation, instruction, direction, or due to the negligence of the insured, the insured's employees, agents, patrons, customers, or any other person arising from any cause whatsoever; or

    i.       The negligent hiring, employment, training, supervision, or retention of any employee or agent of any insured with respect to items a. through h. above.

This exclusion applies regardless of fault or intent and regardless of the particular cause of action.

This exclusion applies to any claim or suit regardless of whether assault, battery, abuse, or molestation is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged bodily injury or property damage, or any other injury or damage, arises out of a chain of events that includes any assault, battery, abuse, or molestation.

(*See* Ex. F at Form CAX3178 0322, Pg. 1/1.)

50. The Excess Policy includes an endorsement labeled "POLICY AMENDMENT – EXTRINSIC EVIDENCE" ("Extrinsic Evidence") that provides in pertinent: "Our right and duty to defend or indemnify the insured against any claim or suit will be determined by review of the facts and allegations pleaded and the terms of this Policy, and we may look to and consider extrinsic evidence outside of the allegations, facts pleaded, or any combination thereof by any claimant to determine whether we owe a duty to defend or indemnify against any such claim or suit." (*Id.* at Form ADF2000 0622, Pg. 1/1.)

51. Kinsale can accordingly rely on extrinsic evidence like police reports, statements made to the police, and discovery in the underlying action.

52. The Excess Policy includes a Duty to Defend exclusion that provides: "Where there is no coverage under the Policy, there is no duty to defend." (*Id.* at Form CAX0001 0817, Pg. 2/11.)

53. Top Line was sued over Miley's shooting at the Property where Top Line provided security services. Specifically, on 04/27/2023, Miley was "a guest and invitee of the Property, was visiting the Property when he was shot in the leg while on or around the premises of the Property." (Ex. B at ¶21.)

54. Accordingly, Kinsale has no duty to defend or pay damages under the Excess Policy's Assault and Battery Exclusion.

## PRAYER FOR RELIEF

Kinsale respectfully requests that the Court:

a) Take jurisdiction and adjudicate the rights of the parties under the policies.

b) Declare the following:

   i. Kinsale has no duty to defend or indemnify Top Line under the Primary Policy's Absolute Firearms Exclusion;

   ii. Kinsale has no duty to defend or indemnify Top Line under the Primary Policy's Assault and Battery Exclusion;

   iii. Kinsale has no duty to defend or indemnify Top Line under the Excess Policy's Absolute Firearms Exclusion;

   iv. Kinsale has no duty to defend or indemnify Top Line under the Excess Policy's Assault and Battery Exclusion;

   v. Kinsale is entitled to reimbursement of defense expenses to the extent there is no coverage under the policies.

c) Award Kinsale all costs to prosecute this action.

d) Award Kinsale any and all other relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

/s/SINA BAHADORAN
**SINA BAHADORAN**
Florida Bar No. 523364
Sina.Bahadoran@clydeco.us

**SERGIO BUENO**
Florida Bar No. 112401
Sergio.Bueno@clydeco.us
**COLSEN CENTNER**
Florida Bar No. 1058625
Colsen.Centner@clydeco.us

Clyde & Co US LLP
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
T: 305.446.2646